IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

───────────────────────────────────────────────

JAMES HELPER,                          )
                                       )
      Plaintiff,                       )
                                       )
v.                                     )          No. 21-1130-TMP
                                       )
KILOLO KIJAKAZI,                       )
ACTING COMMISSIONER OF SOCIAL          )
SECURITY ADMINISTRATION,               )
                                       )
      Defendant.                       )

───────────────────────────────────────────────

ORDER AFFIRMING THE COMMISSIONER'S DECISION
───────────────────────────────────────────────

On September 10, 2021, James Hepler filed a Complaint seeking judicial review of a Social Security disability benefits decision. (ECF No. 1.) Hepler seeks to appeal a final decision of the Commissioner of Social Security ("Commissioner") denying him disability insurance benefits under Title II of the Social Security Act ("the Act"). 42 U.S.C. §§ 401-34. On December 9, 2021, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, both parties consented to the magistrate judge's authority and the case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment. (ECF No. 9.) For the reasons below, the decision of the Commissioner is AFFIRMED.

## I.   BACKGROUND

Hepler initially filed for Social Security Disability Insurance benefits on January 10, 2019, alleging disability beginning on September 21, 2018. (R. 15.) His claim was initially denied on June 14, 2019, and again upon reconsideration on October 24, 2019. (Id.) Hepler then requested a hearing, which was held by telephone on October 22, 2020. (Id.)

After this hearing, the ALJ applied the five step analysis to determine whether Hepler was disabled under the meaning of the Act. At the first step, the ALJ determined that Hepler had not engaged in any substantial gainful activity since September 21, 2018. (R. 17.) At the second step, the ALJ found that Hepler had the following severe impairments: "lumbar disc disease, obesity, depression/bipolar disorder, and anxiety." (Id.) The ALJ noted that Hepler had non-severe impairments of hypertension and hyperlipidemia as well. (Id.)

At the third step, the ALJ concluded that Hepler's existing impairments did not meet or medically equal, either alone or in the aggregate, the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.) When assessing whether Hepler's mental impairments met any listing criteria, the ALJ determined that Hepler had no limitation in understanding, remembering, or applying information, in interacting with others, or in adapting and managing oneself. (R. 18-19.) However, the ALJ

-2-

found that Hepler had a moderate limitation "[w]ith regard to concentrating, persisting or maintaining pace[.]" (R. 19.)

Before proceeding to step four, the ALJ was required to determine Hepler's residual functional capacity ("RFC"), or his "ability to do physical and mental work activities on a sustained basis despite limitations from his impairments." (R. 16.) The ALJ proceeded to consider Hepler's physical examination records and reported symptoms before turning to the medical opinion evidence. (R. 20-24.) On appeal, Hepler takes issue with three aspects of how the ALJ determined his RFC. First, he argues that the ALJ did not adequately account for his moderate limitations in concentrating, persisting, or maintaining pace. (ECF No. 10 at 5-8.) Second, he argues that the ALJ improperly disregarded a letter submitted by his ex-wife. (Id. at 8-10.) Third, he argues that the ALJ mischaracterized the limitations assigned by his treating source, FNP Kelly McCallum. (Id. at 11.)

Relevant to the first argument, at the hearing, the ALJ asked a vocational expert ("VE") to opine on whether three different hypothetical people could find work in the national economy. All hypotheticals included a person of Hepler's age, education, and work history, but each possessed a different RFC. (R. 53-55.) First, the ALJ asked whether jobs could be found in the national economy for a person "limited to a bunch of light exertion as defined, except for occasionally climbing ladders, ropes or

-3-

scaffolds; frequently crawling, crouching, kneeling, stooping and climbing down some stairs[,]" and the expert stated that they could. (R. 53.) Second, the ALJ asked whether jobs could be found in the national economy for the same person as in the first hypothetical but who could "never climb ladders, ropes or scaffolds, occasionally balancing, crawling, crouching, kneeling, stooping and climbing down some stairs; no [] exposure to hazards, meaning machinery or heights; an occasional exposure to vibrations, humidity and extreme cold" and who "is also limited to simple and routine tasks," and the expert stated that the same jobs as in the first hypothetical could be found. (R. 54-55.) Finally, the ALJ asked whether jobs could be found in the national economy for the same person as in the second hypothetical, except that "the person will be off task 20 percent of a normal workday," and the expert stated that jobs could not be found for such a person. (R. 55.)

Relevant to the second argument, when considering all of the medical opinion evidence for persuasiveness, the ALJ noted that "the claimant's ex-wife submitted a letter regarding her observations of the claimant's functioning[.]" (R. 24.) In full, the ALJ stated:

> I reviewed the document, but the same is not a medical opinion under current Agency regulations. Moreover, the statement details many of the same types of complaints and symptoms already alleged by the claimant. Thus, I find that this evidence is cumulative with respect to

the allegations by the claimant and, as explained above, the objective evidence is inconsistent with the degree of severity alleged as part of the claimant's subjective complaints.

(Id.) This was the only consideration or mention of the letter.

Relevant to the third argument, the ALJ considered the reports and opinion of Nurse Practitioner Kelly McCallum, Hepler's treating source. (R. 23.) The ALJ stated:

In October 2018, provider Kelly McCallum found the claimant unable to lift, stand or sit more than 30 minutes, bend, or stoop. In February 2019, she indicated the claimant was unable to return to his prior job due to these limits. The opinions are not persuasive as they are not supported by explanation and are not consistent with the provider's/facility's corresponding examination findings. Further, it appears the restrictions noted by this source were temporary as evidenced by the fact that they were rendered shortly after his alleged onset date, and the fact she placed a temporary duration of restrictions. Later evidence of record shows intact strength and mobility and improvement. The opinions also lack specificity, as it is implausible he could not perform any lifting at all which is inconsistent with exam findings and his own stated activity level.

(R. 23-24) (internal citations omitted). When describing the restrictions McCallum noted as "temporary," the ALJ cited to "Exhibit 3F, p66[.]" (R. 24.) This page shows a FMLA information form filled out by McCallum. (R. 409.) After requiring McCallum to describe Hepler's limitations, the form asked McCallum, "[h]ow long do you expect these limitations and restrictions to impair your patient?" (Id.) McCallum checked a box labeled "Unable to determine, follow up in:" and listed the follow up date as "2-4

-5-

weeks[.]" (Id.) The question provided for two other checkbox options as answers: "Date:" and "Permanently." (Id.)

Ultimately, after considering the above-described and other evidence, the ALJ determined:

> [Hepler] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for never climbing ladders/ropes/scaffolds; occasionally balancing, crawling, crouching, kneeling, stooping, and climbing ramps/stairs; no exposure to hazards (machinery/heights); occasional exposure to vibrations, humidity, and extreme cold; and limited to simple, routine tasks.

(R. 19.) Pursuant to 20 C.F.R. § 404.1567(b), light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Thus, the ALJ adopted the second hypothetical RFC she asked the VE about.

At step four, the ALJ determined that Hepler was "unable to perform any past relevant work." (R. 24.) This determination was informed by the opinion of the VE, who testified that a person of Hepler's RFC could not perform his past relevant work as a corrections officer, machine operator, or materials handler. (Id.) At step five, the ALJ determined that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 25.) The ALJ based

-6-

this determination on the VE's response to her second hypothetical RFC, wherein the expert stated that jobs of "routine clerk," "information clerk," and "retail marker" would be available. (Id.) Accordingly, the ALJ found Hepler not disabled and denied his application for benefits. (R. 26.)

The ALJ published her decision on November 13, 2020. (Id.) Hepler appealed this decision to the Appeals Council, which denied review on August 10, 2021. (R. 1.) Hepler then filed the present appeal on September 10, 2021, arguing that the ALJ inaccurately determined his RFC by not taking his moderate limitations in concentrating, persisting, and maintaining pace into account, by not considering the letter submitted by his ex-wife, and by improperly characterizing the limitations his treating source found as "temporary." (ECF No. 10.) Hepler further argues that the position of Social Security Administration Commissioner contains an unconstitutional removal restriction, which makes the Commissioner's delegation of authority to ALJs unconstitutional and constitutes grounds for setting aside the ALJ's decision here. (Id.)

## II. ANALYSIS

### A.   Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power

-7-

to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794

(6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

**B.   Consideration of Concentration, Persistence, and Maintaining Pace Limitations**

Hepler argues that the ALJ's ultimate RFC determination "fails to account for her finding that Mr. Hepler has impairment in maintaining concentration, persistence, or pace." (ECF No. 10 at 6.) Hepler is correct to point out that none of the ALJ's proposed hypothetical RFCs, nor the final determination, explicitly mention the concentration, persistence, or pace ("CCP") restrictions that she identified when determining the severity of Hepler's mental impairments. (R. 18; 25.) Specifically, Hepler argues that the ALJ's third hypothetical, wherein she "asked the VE to consider hypothetical two with the additional limitation that the person would be off-task 20% of a normal workday," was the "first hypothetical to include limitations for CCP and the VE testified that no work would be available." (ECF No. 10 at 6)

(citing (R. 55)). The government disagrees and argues that "the ALJ amply accounted in her RFC finding for Plaintiff's moderate impairments" by imposing "a limitation to simple type work [which] accounts for concentration deficits, as those deficits may only be encountered when performing more complex work." (ECF No. 15 at 17) (citing Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 635 (6th Cir. 2016)).

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 516 (6th Cir. 2010) (citing Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 239-41 (6th Cir. 2002)). Hepler argues that, as a *per se* rule, "an ALJ does not account for a claimant's [moderate] limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work."[1]

---

[1]This rule appears to be followed in at least the Third, Fourth, Seventh, Eighth and Eleventh Circuits. See Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015); Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011); Stewart v. Astrue, 561 F.3d 679, 685 (7th Cir. 2009); Ramirez v. Barnhart, 372 F.3d 546, 554 (3d Cir. 2004); Newton v. Charter, 92 F.3d 688, 695 (8th Cir. 1996); but see Bordelon v. Astrue, 281 F. App'x 418, 423 (5th Cir. 2008) ("restrictions to rare public interaction, low stress, and simple, one-to two-step instructions reflect that the ALJ reasonably incorporated Bordelon's moderate concentration, persistence, and pace limitations such that the hypothetical question was proper.")

(ECF No. 10 at 6). In Ealy, the Sixth Circuit stated that a limitation to simple, routine tasks did not adequately describe a claimant's limitations regarding pace, speed, and concentration where a doctor "specifically limited [the claimant's] ability to sustain attention to complete simple repetitive tasks to two hour segments over an eight-hour day where speed was not critical." 594 F.3d at 516. Ealy also cited cases that discussed the *per se* rule of other circuits positively. Id. at 516-17 (citing Edwards v. Barnhart, 383 F. Supp. 2d 920, 930-31 (E.D. Mich. 2005) (hypothetical limiting claimant to "jobs entailing no more than simple, routine, unskilled work" not adequate to convey moderate limitation in ability to concentrate, persist, and keep pace)). However, the Sixth Circuit has clarified that "Ealy did not create a *per se* rule that a restriction to simple, routine, repetitive tasks is never adequate to convey a moderate limitation in concentration, persistence, and pace." Walker v. Saul, No. 1:20-cv-0504, 2022 WL 1134300, at *4 (N.D. Ohio Apr. 18, 2022). "Case law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in concentration, persistence, and pace." Kepke, 636 F. App'x at 635. Instead, it seems Ealy stands for the proposition that where a doctor "provides for specific, concrete limitations on [a claimant's] ability to maintain concentration, persistence or pace *while* doing simple, unskilled

-11-

work," the ALJ does not account for those limitations solely by limiting the claimant to simple, repetitive tasks. Id. (citing Smith-Johnson v. Comm'r of Soc. Sec., 579 F. App'x 426, 436-37 (6th Cir. 2014)) (emphasis added).

The present case is fully addressed by Kepke. Hepler does not "cit[e] to any evidence in the record that provides for specific, concrete limitations on h[is] ability to maintain concentration, persistence or pace while doing simple, unskilled work." Kepke, 636 F. App'x at 635. The ALJ noted that "[Hepler] endorsed variable attention and being unable to finish what he starts," but also that he "reported being able to play video games, get[] on the internet, read[], and watch[] TV." (R. 19.) Hepler did not provide any evidence that his CCP limitations affected his ability to perform simple, repetitive tasks, and it is the claimant's burden "to show that [their] limitations were not properly presented to the VE for consideration." Kepke, 636 F. App'x at 635.

Hepler nevertheless argues that only the hypothetical with the "20% off task" limitation accurately conveys his CCP limitations. (ECF No. 10 at 6.) However, Hepler "provides no authority or record cite to support his assertion that his difficulties with concentration, persistence or pace result in him being off task 15% of the time[.]" Koster v. Comm'r of Soc. Sec., 643 F. App'x 466, 478 (6th Cir. 2016). Contrary to Hepler's

characterization of "moderate impairments" as being "defined as off-task 15-20% of the time," moderate restrictions are not quantified in the regulations. O'Connor-Spinner v. Colvin, 832 F.3d 690, 698-99 (7th Cir. 2016) ("Agency regulations, as far as we can tell, do not quantify what is meant by a moderate restriction, but the regulations do instruct ALJs to rate the degree of limitation on a 5 point scale of none, mild, moderate, marked, and extreme[.]") (citing 20 C.F.R. § 404.1520a). The only evidence presented that could be construed as requiring Hepler to be off-task for twenty percent of the day would be his self-reported sleep schedule, as he typically takes a one to two hour nap during the day. (R. 57) (Q: "Ms. Ennis, would either hypothetical number one or number two – if somebody required a one-to-two hour nap every day during the middle of the day, how would that affect your opinion?" A: "There's no napping on the job in competitive work. Therefore, that person would not be able to participate.") But Hepler never identified any medical evidence supporting the idea that he is required to take a nap during the day, and the ALJ considered his reported sleep schedule when determining that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence[.]" (R. 20.) Indeed, in the most recent report of his mental health treating source, Hepler indicated that "his pain was controlled on medications, and

-13-

lethargy and somnolence were denied." (R. 22; 430.) By ultimately determining that hypothetical two accurately reflected Hepler's RFC, the ALJ implicitly "rejected the factual basis" of hypothetical three, namely that Hepler was required to be off task fifteen to twenty percent of the time. Koster, 643 F. App'x at 479. Without pointing to other evidence that the ALJ failed to consider, Hepler has failed to demonstrate that the ALJ's decision here was unsupported by substantial evidence.

## C.    Treatment of Lay Opinion Testimony

Hepler next argues that "[t]he ALJ failed to properly evaluate lay witness testimony in violation of 20 C.F.R. § 404.1529(C)(3)[.]" (ECF No. 10 at 8.) Specifically, Hepler submitted a letter from his ex-wife that detailed her impressions of his abilities and symptoms. Hepler argues that the ALJ improperly discounted the letter for not being a medical opinion and improperly dismissed it as cumulative of his own self-reports. The government disagrees, instead arguing that the ALJ "properly considered the ex-wife's statement, she simply found that it was unsupported by the objective evidence, much like Plaintiff's own allegations." (ECF No. 15 at 20) (citing (R. 24)).

Because Hepler filed his application for benefits after March 27, 2017, the ALJ was required to adhere to 20 C.F.R. § 404.1520c when evaluating medical opinions and prior administrative medical findings. The regulations state that the SSA is "not required to

-14-

articulate how [they] considered evidence from nonmedical sources
using the requirements" they use for evaluating medical opinions.
20 C.F.R. § 404.1520c(d). Hepler states that his ex-wife's letter
constitutes "other evidence" as discussed in 20 C.F.R. §
404.1529(c)(3). This regulation provides:

> Because symptoms sometimes suggest a greater severity of
> impairment than can be shown by objective medical
> evidence alone, we will carefully consider any other
> information you may submit about your symptoms. The
> information that your medical sources or nonmedical
> sources provide about your pain or other symptoms (e.g.,
> what may precipitate or aggravate your symptoms, what
> medications, treatments or other methods you use to
> alleviate them, and how the symptoms may affect your
> pattern of daily living) is also an important indicator
> of the intensity and persistence of your symptoms.
> Because symptoms, such as pain, are subjective and
> difficult to quantify, any symptom-related functional
> limitations and restrictions that your medical sources
> or nonmedical sources report, which can reasonably be
> accepted as consistent with the objective medical
> evidence and other evidence, will be taken into account
> as explained in paragraph (c)(4) of this section in
> reaching a conclusion as to whether you are disabled. We
> will consider all of the evidence presented, including
> information about your prior work record, your
> statements about your symptoms, evidence submitted by
> your medical sources, and observations by our employees
> and other persons.

20 C.F.R. § 404.1529(c)(3).

By its language, this regulation only requires that reports
from nonmedical sources be "taken into account," and the ALJ did
consider the letter in her ultimate RFC determination. (R. 24.)
The ALJ determined that "the statement details many of the same
types of complaints and symptoms already alleged by the claimant"
and found "that this evidence is cumulative with respect to the

allegations by the claimant and, as explained above, the objective evidence is inconsistent with the degree of severity alleged as part of the claimant's subjective complaints." (Id.) Hepler argues that the current law not only requires the letter to be considered, but that the ALJ's discounting of the letter as "cumulative" was improper since "the ALJ must give reasons for not crediting the testimony of a lay witness and those reasons must be germane to each witness." (ECF No. 10 at 10) (emphasis in original). In certain cases, the Sixth Circuit has stated that "if lay witness testimony is provided, the ALJ cannot disregard it without comment, and must give reasons for not crediting the testimony that are germane to each witness." Maloney v. Comm'r of Soc. Sec., 480 F. App'x 804, 810 (6th Cir. 2012) (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)). The continuing force of these statements is unclear after changes in Social Security regulations in 2017.[2]

---

[2]The cases cited to support this statement typically cite either a prior version of 20 C.F.R. § 404.1513 or the now rescinded SSR 06-03p, which categorized evidence and explained how each category must be considered, respectively. See Miller v. Comm'r of Soc. Sec., No. 13-14297, 2014 U.S. Dist. LEXIS 155054, at *22 (E.D. Mich. Oct. 31, 2014) ("Pursuant to SSR 06-03p, the ALJ may consider evidence from other sources such as family members whose observations may be helpful in developing an assessment of a claimant's limitations."). Changes in 2017 rescinded SSR 06-03p and rewrote 20 C.F.R. § 404.1513. Recission of Soc. Sec. Rulings 96-2p, 96-5p, and 06-3p, 82 FR 15263-01, 2017 WL 1105348 (Mar. 27, 2017); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). Now, 20 C.F.R. § 404.1529(3) describes what is required of ALJs when

Regardless, the undersigned finds that the ALJ did consider Hepler's ex-wife's letter and credited it, but ultimately found its account inconsistent with the objective medical evidence. The letter was explicitly considered and discussed by the ALJ, and found to detail "many of the same types of complaints and symptoms already alleged by the claimant." (R. 24.) Since the ALJ had previously found the claimant's symptoms and complaints to be inconsistent with the objective medical evidence, the ALJ found the letter "cumulative." This is a reason to discount the letter that is "germane" to this witness: this witness provided an account identical to Hepler's, which the ALJ found to be inconsistent with the objective medical evidence. As 20 C.F.R. § 404.1529(3) states, nonmedical sources "which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account as explained in paragraph (c)(4) of this section in reaching a conclusion as to whether you are disabled." This letter cannot reasonably be so accepted, and the ALJ's determination was supported by substantial evidence.

Further, "even if the ALJ erroneously disregards a lay witness's testimony, the error is harmless if 'no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" Maloney, 480 F. App'x at 810 (quoting

---

considering nonmedical source evidence of a claimant's symptoms, including pain, as the letter at issue here provided.

Stout v. Comm'r of Soc. Sec., 454 F.3d 1050, 1056 (9th Cir. 2006)).
The undersigned notes that it is arguable whether the ALJ
"disregarded" the ex-wife's testimony. But even if it was fully
regarded, it merely detailed the exact symptoms alleged by Hepler,
which were still found to be inconsistent with the degree of
severity supported by the objective evidence. Any alleged error
the ALJ made in her consideration of the letter was harmless.

## D.    Mischaracterization of Restrictions

Hepler next argues that the ALJ mischaracterized the
restrictions that Nurse Practitioner Kelly McCallum listed. (ECF
No. 10 at 11.) The ALJ found McCallum's opinions not persuasive
"as they are not supported by explanation and are not consistent
with the provider's/facility's corresponding examination
findings," and also described the restrictions McCallum noted as
"temporary." (R. 24.) Hepler takes issue with the "temporary" label
and argues that nothing "indicates that they were temporary." (ECF
No. 10 at 11.) McCallum specifically stated that she was "unable
to determine" how long the restrictions and limitations would
impair Hepler. (R. 409.) The form at issue provided McCallum three
options: to set a specific date after which the restrictions would
not apply, to list that she was unable to determine when they would
end and to set a check in date, and to state that the restrictions
were permanent. (Id.) McCallum thus declined to state that the
restrictions were permanent.

-18-

In situations of similar ambiguity, courts have examined other evidence in the record to determine whether restrictions were intended to be permanent or temporary. In Troy v. Colvin, the court noted that because the restrictions at issue were imposed shortly after surgery, never described as permanent, and followed by improvement in physical examinations, they were likely intended as temporary. 266 F. Supp. 3d 288, 294-95 (D.D.C. 2017). In Lavender v. Berryhill, the court similarly examined the notes and reports of the relevant physician to see if the restrictions remained over time or were reduced as treatment continued. No. 1:17-cv-01759-TAB-TWP, 2018 WL 2251518, at *6-7 (S.D. Ind. May 17, 2018). In Yonka v. Comm'r of Soc. Sec., the court credited the ALJ's interpretation of certain restrictions as temporary because "they were given in the context of a discharge summary, alongside other post-operative wound care, diet, and follow up appointment instructions." No. 20-11777, 2021 WL 4785519, at *5 (E.D. Mich. Jun. 28, 2021). Ultimately, "it was Plaintiff's burden to put forth sufficient evidence to prove her disability" and "the ALJ appropriately declined to find the restrictions persuasive because of their temporary nature." Id.

The ALJ's interpretation of FNP McCallum's restrictions was made similarly and supported by substantial evidence. The ALJ noted that McCallum's restrictions "were rendered shortly after [Hepler's] alleged onset date" and that "she placed a temporary

duration of restrictions" given the follow up appointment scheduling. (R. 24.) These indicators have been previously used by courts to help inform whether restrictions were intended as temporary, as detailed above. The ALJ also examined other evidence in the record that showed "intact strength and mobility" and improvement in pain management with medication. (R. 22-24.) Given that McCallum declined to describe Hepler's restrictions as permanent, personally documented improvement in his condition, and imposed these restrictions shortly after his original onset date, the ALJ's decision to interpret the restrictions in Exhibit 3F, p.66 as temporary was supported by substantial evidence. Further, the court notes that the ALJ listed other reasons for not finding McCallum's opinions persuasive, as they were "not supported by explanation and [were] not consistent with the provider/facility's corresponding examination findings." (R. 24.) The ALJ also found that McCallum's opinions "lack specificity, as it is implausible [Hepler] could not perform any lifting at all which is inconsistent with exam findings and his own stated activity level." (Id.) Thus, even if McCallum had described Hepler's restrictions as permanent, the ALJ's decision to find such an opinion not persuasive was still supported by substantial evidence.

**E.   Constitutionality of the Social Security Administration Commissioner**

Hepler's final argument goes beyond his own case. He argues that the Supreme Court's holding in Selia Law v. CFPB, 140 S. Ct.

2183 (2020), which stated that it is unconstitutional for an executive agency to be lead by a single person whose term does not overlap with the President's and who can only be removed for cause, applies equally to the structure of the Social Security Administration. The Social Security Commissioner is appointed for a term of six years and cannot be removed except for cause. Because of this unconstitutional removal provision, Hepler argues that the ALJ's decision is not binding, since "[t]he ALJ's delegation of authority in this case came from [the Commissioner] and is therefor constitutionally defective." (ECF No. 10 at 13.) In response, the government does not disagree that the holding of Selia Law applies to the Social Security Administration's structure, but instead argues that Collins v. Yellen, 141 S. Ct. 1761 (2021) requires Hepler to show that the unconstitutional removal restriction "actually caused him harm" in order to set aside the ALJ's decision. (ECF No. 15 at 4.)

The court agrees with the government. Neither side disputes that the removal provision is unconstitutional. However, the government notes that the Social Security Commissioner was "properly appointed." (ECF No. 15 at 5.) "As a result, there is no reason to regard any of the actions taken . . . as void." Collins, 141 S. Ct. at 1787. Indeed, "settled precedent also confirms that the unlawfulness of the removal provision does not strip the [Commissioner] of the power to undertake the responsibilities of

-21-

his office," which would include appointing and delegating authority to ALJs, so long as the appointment was proper. Id. at 1788 n.23 (citing Selia Law, 140 S. Ct. at 2207-2211). Further, it appears that Hepler's case was adjudicated by an ALJ whose appointment was ratified by an Acting Commissioner, to whom the unconstitutional removal restriction presumptively does not apply. (R. 26); Collins, 140 S. Ct. at 1782 ("When a statute does not limit the President's power to remove an agency head, we generally presume that the officer serves at the President's pleasure."). Hepler does not argue that he was specifically harmed by the removal provision, or that the outcome of his case was influenced by it in any way, and this argument fails as a result.

### III. CONCLUSION

For the reasons above, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

May 18, 2022
Date